## In re PRESENTMENT BY GRAND JURY OF STETSER.

### No. 45.

District Court, D. Delaware.

June 24, 1942.

Caleb R. Layton, 3rd, and Aaron Finger, both of Wilmington, Del., for petitioner.

William Maloney, Sp. Asst. to the Atty. Gen., and Stewart Lynch, U. S. Atty., of Wilmington, Del., for the Government.

WATSON, District Judge.

In a presentment by the Grand Jury Albert Stetser, (hereinafter referred to as the "Defendant"), was charged with having obstructed the administration of justice by giving evasive, perjurious, and con-

tumacious answers to questions propounded to him before the Grand Jury. A full and complete hearing on the merits was held, and briefs were submitted by counsel for the Government and by counsel for the Defendant.

I have heretofore set forth my views as to the legal questions involved in this matter in a similar case captioned In the Matter of Presentment by Grand Jury of James Austin Ellison, D.C., 44 F.Supp. 375. There is, therefore, only one question now before the Court and that is, whether or not the evidence offered establishes beyond a reasonable doubt that the Defendant has obstructed the administration of justice through the commission of the acts charged in the Presentment, and for that reason should be adjudged in contempt of court.

█ Contempt, as I understand it, consists of a clear and open wilful disregard for the authority and dignity of the Court in a manner contrary to the provisions of 28 U.S.C.A. § 385. To show this the Government has offered evidence which, if believed in every detail, would show that the Defendant did:

1. Fail and refuse to state the exact number of ballots which he ordered.

2. Fail and refuse to admit having had conversations with one William N. Cann concerning the ballots so ordered and the payment for ballots printed by said William N. Cann.

3. Fail and refuse to state that of his own knowledge he knew that ballots for the election of 1940 were printed by William N. Cann.

4. Fail and refuse to admit having received two letters from William N. Cann concerning ballots.

An examination of the testimony of the Defendant taken before the Grand Jury and upon which the Presentment in this case is based does not on its face show any evasion, perjury, or contumacy on the part of the Defendant. Therefore, the guilt of the Defendant must be found, if at all, from the evidence received at the trial.

The Defendant testified before the Grand Jury that he did not know exactly how many ballots he had ordered. This testimony was given more than a year after the time the ballots had been ordered. The Defendant did, however, state that he ordered the ballots by letter and that they were paid for by check, and the report of a Mr. Brown, who was, apparently, the treasurer of the New Castle County Executive Committee, would show the number of ballots ordered. The Defendant also testified before the Grand Jury that a check accompanied his order for ballots. This statement was later shown to be erroneous and I refer to it here only to show that the Defendant, while testifying before the Grand Jury, did not in fact recall the details of the transaction. The fact that the ballots were ordered by letter is supported by the Government's evidence. The evidence received shows beyond question that this Defendant did not wilfully falsify or refuse to disclose facts concerning the ordering of the ballots in question.

Insofar as the conversations with William N. Cann are concerned, the Defendant persists in his denial that such conversations occurred. The evidence shows that these conversations, if they did occur, were of an innocuous character, and I find nothing to show that there was anything in the conversations, or connected with them, which would warrant the assumption that the Defendant does recall them, if they in fact were had. A witness is not bound to recollect every detail of his life over a period of more than a year under penalty of punishment for failure to do so.

The Government contends that the Defendant was in contempt for failure to state that he knew that the ballots were printed by William N. Cann. The evidence does not show that he ever saw the ballots being printed, or saw the contract for the printing of the ballots. Consequently, his answer was technically correct. However, the Defendant did state that he thought the ballots were printed by William N. Cann, and the Government at that time knew that this was true. His failure to state definitely the name of the firm that printed the ballots certainly did not obstruct the investigation in the slightest. Therefore, this testimony is important only as tending to show an obstructive attitude on the part of the Defendant. Of itself it is insufficient to even warrant consideration, first, because it is so insignificant as to hardly merit comment; and, second, because the Defendant must have known that the Government had been informed of the name of the printer of the ballots, and, consequently, he must have known that no action on his part would conceal that fact from the Government. The only possible conclusion that can be drawn from the evidence with regard to this testimony is that the Defend-

ant was fearful of being trapped into making a definite statement as to a matter about which he might conceivably be misinformed. His testimony before the Grand Jury indicates to me that he believed that the ballots were printed by William N. Cann, but that he did not so testify because of a fear that the contract might have been sublet or performed by some one other than William N. Cann by means of some transaction of which he should have had knowledge, but did not.

The evidence with regard to the two letters written by William N. Cann to the Defendant is directed to that portion of the Defendant's testimony before the Grand Jury in which he denied that he knew that William N. Cann printed the ballots, and in which he denied that he ordered ballots directly from William N. Cann. The Defendant denies having received these letters. The evidence which tends to show that the Defendant did in fact receive the letters consists of testimony that the letters were prepared and signed and, according to office practice, must have been placed in the mail. The Defendant showed that his records pertaining to the election had been destroyed when he left the political office which he held, and that he does not recall having received the letters and, in fact, believes that he did not receive them. These letters are again matters which might easily be forgotten and, even though the Defendant might be presumed to have a recollection now of these letters, there is nothing in his testimony before the Grand Jury that would warrant a finding that he at that time should have recalled receiving the letters and, by that recollection, have his memory refreshed as to the matters about which he was there questioned.

In dealing so particularly with the evidence in this case, I have no wish to intimate that I find any merit whatsoever in the case presented against the Defendant, and I have dealt with the evidence for the sole reason that I think that the importance of this proceeding requires more than the bare finding of not guilty which the weakness of the case demands.

There is one further matter which I believe warrants comment, and that is that the Defendant was never recalled before the Grand Jury and questioned as to the matters which he was unable to recall upon the occasion of his single appearance before the Grand Jury. His testimony given before the Grand Jury was so short that, in view of the failure of the Government to offer any evidence of impropriety in his demeanor before the Grand Jury, it is incomprehensible to the court that his testimony before that body could be considered contemptuous.

I think that the Government has utterly failed to show any action on the part of this Defendant which could be characterized as contempt of court.

Now, June 24, 1942, I find the Defendant, Albert Stetser, not guilty of contempt of court, and the rule to show cause entered March 6, 1942, is discharged.